UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:21-cr-184-BAH |
| JAMES ALLEN MELS | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION FOR A BILL OF PARTICUALRS

The Court should deny the defendant's motion for a bill of particulars—filed more than a year after his arraignment—as untimely. The Court should also deny the motion on the merits because it improperly asks the Court to compel the government to provide a detailed exposition of its evidence and legal theories, and because the information sought is available to the defendant in the government's discovery and other sources.

### Relevant Factual & Procedural Background

The defendant was arrested pursuant to a two-count complaint on February 11, 2021. (Dkt. 1; 2/11/2021 minute entry). The complaint charged the defendant with violating 18 U.S.C. § 1752(a)(1) and 40 U.S.C. § 5104(e)(2) in connection with his entry into, and conduct within, the United States Capitol Building on January 6, 2021. (Dkt. 1.) The Statement of Facts accompanying the complaint specified, among other things, that a joint session of Congress had convened on January 6, 2021, to certify the vote count of the Electoral College of the 2020 Presidential Election that had taken place on November 3, 2020. (Dkt. 1-1 at 1.) The Statement of Facts specifies that this joint session began at approximately 1:00 p.m. and that it was disrupted by a large crowd that forced entry into the Capitol building shortly after 2:00 p.m. (*Id.*) It further states that Vice President Mike Pence and other members of Congress were instructed to, and did, evacuate the House and Senate chambers at approximately 2:20 p.m., and that "the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m." (*Id.*)

On March 5, 2021, the defendant was arraigned on an Information charging him with four crimes related to his conduct on January 6, 2021. (Dkt. 7; 3/5/21 minute entry.) At issue in the instant motion are Counts Two and Three, which focus on the defendant's conduct on January 6th "in and within such proximity to, the United States Capitol" and "in any of the Capitol Buildings," respectively. (Dkt. 7 at 1-2.)

Following the defendant's arraignment, the parties appeared for status hearings before this Court on May 14, 2021, July 9, 2021, and April 5, 2022. Additional status hearings scheduled for September 24, 2021, November 19, 2021, January 7, 2022, and February 25, 2022, were continued following joint motions by the parties or unopposed motion by the defendant.

The defendant's current counsel filed her notice of appearance on March 29, 2022. (Dkt. 35.)

On April 1, 2022, the parties notified the Court that the defendant rejected the government's plea offer by letting it expire, and that a trial would therefore be necessary. (*See* Dkt. 36.) By order dated May 9, 2022, this Court set this case for trial on August 1, 2022. (Dkt. 5/9/22 minute entry.)

The defendant filed the instant motion seeking a bill of particulars on June 10, 2022. (Dkt. 41.)

**I.      Defendant's Motion Should Be Denied as Untimely.**

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, a defendant may move for a bill of particulars "before or within 14 days of arraignment or at a later time if the court permits." A defendant should seek leave of court to file such a motion outside this 14-day window. *See United States v. Kozel*, No. 19-CR-460 (KMW), 2020 WL 4751498, at *3 (S.D.N.Y. Aug. 17, 2020) ("A defendant must move for a bill of particulars within 14 days of his arraignment, unless authorized by the court.). A court should not countenance an untimely motion where the defendant offers no explanation or excuse for the delay. *Id*. ("Defendant offers no explanation for his delay, and the Court declines to excuse Defendant's lateness.").

The defendant in this case was arraigned on the Information on March 5, 2021. (Dkt. 7; 3/5/2021 minute entry.) The instant motion, which was filed June 10, 2022, is thus more than 449 days (or 1 year, 2 months, and 23 days) late. The defendant offers no explanation or excuse for this extraordinary delay, nor any reason for the Court to find good cause to allow the late filing now. Indeed, the motion would still be untimely—by two months—if the Court were to consider the fact that the defendant's current attorney did not appear until March 29, 2022. (*See* Dkt. 35.) And the motion would be 57 days late if the clock were to start on the date the parties informed the Court that a trial (and thus the need to prepare a trial defense) would be necessary. (*See* Dkt. 36.) And the motion would be 19 days late if the clock started the day that this Court definitively set the August 1, 2022, trial date. (*See* Dkt. 5/9/22 minute entry.)

The 14-day time limit in Rule 7(f) makes logical sense. By filing a motion for a bill of particulars, a defendant is essentially telling the Court, "I can't prepare my defense because I don't understand what crime I am alleged to have committed." *See* Mot. at 3 ("Without further elaboration from the government, Mr. Mels does not know, with sufficient clarity, the exact crimes he must prepare to defend against."). It is not in anyone's interest—not the defendant's, not the government's, not the Court's, and not the public's—to allow months and months to pass with a defendant unable to prepare a defense due to a *true* lack of information. Allowing a defendant to file a motion for a bill of particulars more than a year after arraignment and on the eve of trial is thus antithetical to the very purpose of a bill of particulars.

For this reason, a motion for a bill of particulars should be filed "promptly" after arraignment. *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, fn. 6 (D.D.C. 2015) (noting motion for bill of particulars should be filed "promptly after the initiation of a criminal case"). Indeed, multiple district courts have denied motions seeking a bill of particulars as untimely in less egregious procedural postures than the 14-month delay in this case. *See, e.g.*, *United States v. Tajideen*, 319 F. Supp. 3d 445, 466 fn. 12 (D.D.C. 2018) (denying motion filed 308 days after arraignment); *United States v. Russo*, No. 20-CR-023 (DLI), 2021 WL 1723250,

at *4 (E.D.N.Y. Apr. 30, 2021) (denying motion filed 10 months after arraignment); *Kozel*, 2020 WL 4751498, at *3 (denying motion filed six months after arraignment). And as with a decision based on the merits, a decision to deny a motion for a bill of particulars as untimely is soundly within the discretion of the court. *United States v. Cooper*, 902 F.2d 1570 (6th Cir. 1990) ("Thus, because Cooper's motion for a bill of particulars was untimely, the district court acted within its discretion to deny the motion").

Because the defendant's motion was filed 449 days late, the Court should deny it as untimely and not reach the merits.

## II.     The Information and Discovery Sufficiently Detail the Charges.

If the Court reaches the merits of the defendant's motion, it should deny it because the defendant improperly asks the Court to compel the government to provide a detailed exposition of its trial evidence and arguments, and because the information sought is available to the defendant in the government's discovery and from other sources.

### A.     Legal standard

The Federal Rules of Criminal Procedure require that an "information … be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A charging instrument "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Generally, an information is sufficient if it "set[s] forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id*. (internal quotation marks omitted).

The purpose of a bill of particulars is, "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to

prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. 1987). If an indictment or information "is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Id.*; *see United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015) (denying motion for bill of particulars and noting that the government had provided extensive discovery that "allows Defendants to adequately prepare for trial").

A bill of particulars is not a matter of right and is only ordered when "necessary." *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (quoting 1 Charles Alan Wright & Andrew Leipold, *Federal Practice and Procedure: Criminal § 130* (4th ed. 2008). A bill of particulars "is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence." *United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999); *see also United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (same). Rather, a bill of particulars "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation and not to provide the defendant with the fruit of the government's investigation." *Sanford Ltd.*, 841 F. Supp. 2d at 316 (internal quotation marks and citation omitted, emphasis in original). Therefore, a bill of particulars "properly includes clarification of the indictment, not the government's proof of its case." *United States v. Martinez*, 764 F. Supp. 2d 166, 173 (D.D.C. 2011) (internal quotation marks and citation omitted); *United States v. Savoy*, 889 F. Supp. 2d 78, 115 (D.D.C. 2012) (same).

### B. Defendant Seeks Evidentiary Proof, Not Clarification of Charges

Here, the defendant seeks a bill of particulars to provide two categories of information: (1) additional detail regarding the defendant's actions that constitute "disorderly and disruptive conduct," and (2) specification of what government business and official functions the defendant intended to impede. Mot. at 5. The defendant claims that the bill of particulars is necessary because, according to him, the discovery provided to date, "does not make clear what precisely it

is that the government alleges Mr. Mels did that constitutes disorderly and disruptive conduct and what the government alleges his intent was." Mot. at 2.

The Information in this case is not ambiguous and the defendant appears to fully understand the allegations against him. For example, the defendant correctly notes that "'[d]isorderly and disruptive conduct' is a very broad term, encompassing innumerable specific actions." Mot. at 5. He appears to know that "disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person, and that "disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process. *See* Mot. at 2 (referencing defendant's purported lack of jostling and yelling). The defendant is not asking for *clarification* of the terms "disorderly conduct" or "disruptive conduct," or clarification of the elements of the charges against him. Rather, the defendant simply wants to know how the government is going to prove those allegations. This is precisely the type of information— evidentiary proof not clarification—improperly sought by a bill of particulars. *Martinez*, 764 F. Supp. 2d at 173.

### C. The Information Sought is Available in Discovery and Other Sources

The defendant has enough information to enable him to prepare his defenses to the allegations against him. Indeed, he has previewed those defenses in his motion. *See* Mot. at 1-2 (noting the defendant claims to have walked in the building through open doors with other people, did not climb through a window, did not destroy property, did not assault anyone, did not yell abusive language, intended to present copy of the Constitution to a police officer, etc.).

Video footage from the U.S. Capitol Police closed-circuit video system—which has been provided to the defendant—shows the second breach of the Senate Wing Doors by a group of rioters that occurred at approximately 2:47 p.m. Once inside the Capitol, the video footage shows the defendant verbally confronting multiple police officers and physically touching at least one of them. The CCTV footage produced in discovery shows the defendant walking

**Government's Opposition to**
**Defendant's Motion for a Bill of Particulars—Page 6**

through the Hall of Columns, Crypt, and exiting through the South Door. Additional video footage of the defendant near and inside the Capitol is publicly available on various websites that track the January 6th Capitol riot. The discovery also includes photos taken by the defendant on his own cell phone along his route inside the Capitol building. In other words, the government has provided, and the defendant has available to him, photographic and video documentation of his actions on January 6th … and he has already used this information to formulate his defenses.

Furthermore, to the extent the defendant claims to need additional information about "what the government alleges his intent was," (Mot. at 2), the government directs him to the discovery provided to him, including, among other things, the text messages taken from his own cellphone. For example:

- On December 22, 2020, the defendant texted an individual: "Yep and the best us patriots can do is cut your heads off for treason? What do you think about that congress?" Twenty minutes later, the defendant invited the same individual to accompany him to Washington, D.C. on January 6th: "So we're wondering if it's possible you can go to Washington DC a January 6 …"

- The defendant texted a second individual on December 30, 2020, "Im goin to DC woo hoo[.]" The next day, the defendant—who goes by the nickname Jimmy—texted the same individual, "Im brining my 30 30 Winchester. My dad calls me one shot Jimmy with that thing."

- The defendant sent the following text messages to a third individual on December 31, 2020, noting that he was willing to die for the cause: (1) "Im honored to fight on the ground with you. Patriot"; (2) "Please don't say Jimmy Mels too much... You put me on a pedestal and its unconformable. Im just a regular guy like you. Wanting to help people like minded to save this country from forgein and domestic terrorist. Tradors treasonous rat bastards sold out my taxpaying county."; and (3) "Ohhhh I know that God is with us … Im just prepared to meet Him."

- The defendant had the following conversation by text with a fourth individual on January 1, 2021:

    James Mels:    I leave for DC in 4 daze

**Government's Opposition to**
**Defendant's Motion for a Bill of Particulars—Page 7**

| | |
|---|---|
| Individual #4: | What???<br>DC<br>what are you going there for??? |
| James Mels: | Hangings?<br>Execution?<br>Gitmo?<br>We the people are getting our country back from these treasonous rat bastards<br>Corruption at the highest level. |

- The defendant sent the following text messages to a fifth individual on January 1, 2021: (1) "… These are the patriots Im going with."; (2) "Truth tellers. This guy is the Guru proof fraud was made... That's treason and if the people involved were government officials? Treason is punishable by death. We the people want the death penalty. For crimes against humanity."

- The defendant sent the following text messages to a seventh individual on December 22, 2020, and January 1, 2021, respectively, indicating that he would be among the group of people to "eradicate evil" in Washington, D.C. on January 6th: (1) I am going to go to Washington DC January 6th"; and (2) "Mass arrests on the 5th (D5) my perdition treason in the highest order. It has to be this way. Gitmo for the lucky ones. We the people have to eradicate evil."

- The defendant sent the following text messages to an eighth individual on January 1, 2021: "Im going to DC in 4 daze. Once a veteran always a veteran. Defending this country from terrorists foreign or domestic. Till death do US part. Wwg1wga."[1]

- The defendant sent the following text messages to a ninth individual on January 2, 2021: (1) "Balls my friend balls. Im going to DC in 3 daze"; and (2) More balls... And We the People are going to hang them by their Balls?"

- The defendant sent the following text messages to a 10th individual on January 2, 2021, again confirming his willingness to die for his cause: (1) "Im going to DC in 3 daze"; (2) Just saying becarefull of whatyou hear watch and listen to. Fake news is real. […] But there are a lot lot of truth tellers. (Peacemakers) as the

---

[1] "WWG1WGA" is an initialism for "where we go one, we go all," the rallying cry of supporters of the QAnon conspiracy theory. The term appears to come from a line in the 1996 Jeff Bridges sailing adventure "White Squall," and which QAnon supporters misattribute to President Kennedy. *See* https://www.cbsnews.com/news/what-is-the-qanon-conspiracy-theory/.

>bible speaks of. Peacemakers are the sons of God. That where I stand tall. And will die for it. My country. My freedom. My rights in the Constitution of the United States of America. […]; (3) If I don't come back? Do your best to keep this. But don't use it before? Its my personal feelings and Im sharing them with you. I am in stable mind and I am Not suicidal. I am a Christian and I believe the Holy Spirit is telling me to write this to you now. So please honor this letter."

Lastly, to the extent the defendant feigns ignorance of "what government business and official functions he was allegedly intending to impede," (*see* Mot. at 2), he is correct that that it includes the joint session of Congress that convened on January 6, 2021, to certify the Electoral College vote count, which was in session from approximately 1:00 p.m. through at least 8:00 p.m. *See* Mot. at 5 ("Even if the Court concludes that the affidavit and the record provide sufficient notice that Mr. Mels is alleged to have obstructed the counting of electoral votes that took place on January 6, 2021 …"). This detail, admittedly furnished in the Statement of Facts and not the Information, is sufficient to put the defendant on notice of the allegations against him so as to render a bill of particulars unnecessary. *See Sanford Ltd.*, 841 F. Supp. 2d at 316 (finding bill of particulars expounding on original indictment unwarranted because information sought by the defendant was furnished in discovery and in a superseding indictment).

But the government is not required provide the level of granularity the defendant requests or to further specify, "what portion or portions of the day-long congressional proceedings the government believes to qualify as the 'official proceeding' at issue" or what other related government function or business he intended to impede. *See* Mot. at 5; *see also United States v. Caldwell*, No. 1:21-cr-28-APM (D.D.C. Sept. 14, 2021) (denying motion for bill of particulars seeking specification of the date, case number, and named defendants of any indictment returned by the grand jury the defendant was charged with impeding, where the defendant was apprised of the month the grand jury was empaneled, the federal district in which it sat, and the general subject matter it was investigating). Moreover, if the defendant believes that any stretch of the congressional proceedings on January 6th do not qualify as an "official proceeding," he has enough information to prepare his defense on that issue.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion for a bill of particulars should be denied.

Dated: June 24, 2022.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/ Douglas B. Brasher*
                DOUGLAS B. BRASHER
                Texas State Bar No. 24077601
                Assistant United States Attorney (Detailed)
                1100 Commerce Street, Third Floor
                Dallas, TX 75242
                (214) 659-8604
                douglas.brasher@usdoj.gov

By:    */s/ Francesco Valentini*
                FRANCESCO VALENTINI
                D.C. Bar No. 986769
                Trial Attorney
                United States Department of Justice, Criminal Division
                Detailed to the D.C. United States Attorney's Office
                601 D Street NW
                Washington, D.C. 20530
                (202) 598-2337
                francesco.valentini@usdoj.gov